**Robert PRESIDENT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 50961.**

Missouri Court of Appeals,
Western District.

March 12, 1996.

Rebecca L. Kurz, Asst. Appellate Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

HANNA, Judge.

The defendant, Robert President, was charged with two counts of first degree assault of a law enforcement officer, § 565.081, RSMo 1994, two counts of armed criminal action, § 571.015, RSMo 1994, and one count of possession of a controlled substance with intent to sell, § 195.211, RSMo 1994.

The defendant pleaded guilty to two counts of first degree attempted assault of a law enforcement officer and possession of a controlled substance with intent to sell. In exchange for this guilty plea, the state dismissed the remaining charges and recommended that the defendant be sentenced to three concurrent terms of five years imprisonment. The plea court accepted the defendant's guilty plea but deferred sentencing for two weeks, at the defendant's request. The court warned the defendant that if he failed to appear for sentencing he would not be allowed to withdraw his guilty plea and the court would reject the plea agreement and sentence him as it deemed appropriate.

The defendant failed to appear for sentencing, and the court issued a capias warrant. The defendant was apprehended three months later. Subsequently, the court held a sentencing hearing, during which the defendant claimed that he was unable to appear on the original sentencing date because he was incarcerated in Kansas. Neither he nor his attorney could substantiate this claim. The court, finding the defendant's explanation unpersuasive, told the defendant it was not going to accept the plea agreement. At that time the defendant asked to withdraw his plea. The court refused to let the defendant withdraw his plea and it sentenced him to three concurrent terms of ten years imprisonment.

The defendant filed a Rule 24.035 motion, alleging that his plea counsel had been ineffective in that he coerced the defendant to plead guilty. He also alleged that the court denied him his right to due process of law and violated Rule 24.02(d)(4) when it refused to allow him to withdraw his guilty plea after rejecting the plea agreement. After an evidentiary hearing, the motion court dismissed the defendant's motion based on the escape rule. The defendant appeals.

The defendant contends that the motion court arbitrarily applied the escape rule because the dismissal of his Rule 24.035 motion does not further any of the purposes of the escape rule. He further argues that the motion court clearly erred in applying the escape rule to his claims because he alleged errors occurring after he was returned to custody.

The escape rule operates to deny the right of appeal to a defendant who attempts to escape justice. *State v. Troupe*, 891 S.W.2d 808, 809 (Mo. banc 1995). A defendant who attempts to escape justice may also lose the right to post-conviction relief. *Id.* The motion court correctly concluded that, for purposes of this rule, the defendant "escaped" because he failed to appear for sentencing. *See State v. Woods*, 812 S.W.2d 267, 268–69 (Mo.App.1991).

The defendant contends that the motion court clearly erred by arbitrarily applying the escape rule to dismiss his Rule 24.035 motion, because the ruling furthers none of the purposes of the escape rule, as set forth in *Ortega–Rodriguez v. United States*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). In *Ortega–Rodriguez*, the United States Supreme Court held that a court may not dismiss an appeal pursuant to the federal escape rule unless a defendant's escape coincides with the pendency of the appeal or it adversely affects the appellate process. *Id.*

The defendant mistakenly relies upon this federal standard, which the Missouri Supreme Court has rejected. *Troupe*, 891 S.W.2d at 811. In *Troupe*, the Court, insisting that it would not adopt a rule that permits a defendant to benefit from his own misconduct, held that the escape rule may be applied when an escape "adversely affects the criminal justice system." *Id.*

The motion court found that the defendant's escape adversely affected the Missouri criminal justice system in that it delayed his appeal by four months and hindered the administration of justice. The defendant first takes issue with how the motion court calculated this four month delay. Specifically, the defendant asserts that the motion court erred by taking judicial notice of the fact that if the defendant had been sentenced on April 4, 1994, the original sentencing date, he would have been transported to the Department of Corrections no later than April 8, 1994. The court found that this would have made his *pro se* Rule 24.035 motion due no later than July 7, 1994. He further argues that, even assuming that this estimated due date is accurate, the actual delay was only one and a half months because he filed his motion on August 25, 1994.

■ However, the fact remains that there was a delay of four months between the original sentencing date and the actual sentencing date caused by the defendant's failure to appear. Given this time gap delay, we agree with the motion court's finding that there was a four month delay in the defendant's appeal.

The Missouri Supreme Court has previously held that a delay of more than eight months between a defendant's conviction and his sentencing due to his escape necessarily had an adverse impact on the criminal justice system. *Id.* Application of the escape rule to dismiss an appeal was also upheld where the delay between conviction and sentencing was only five months. *State v. Wright*, 763 S.W.2d 167, 168 (Mo.App.1988). The motion court did not err in finding that a four month delay adversely affected the criminal justice system.

■ In fact, the motion court's finding furthers a primary purpose of the escape rule: to preserve respect for the criminal justice system. *State v. Schleeper*, 806 S.W.2d 459, 460 (Mo.App.1991). Those who seek the protection of this legal system must be willing to abide by its rules and decisions. *Wright*, 763 S.W.2d at 168–69. Because the defendant was not willing to do so, the motion court correctly concluded that he waived any right to appeal errors occurring prior to his return to custody.

■ The defendant next claims that the motion court erred in applying the escape rule to dismiss his motion because he alleged errors that occurred after he was returned to custody. The escape rule cannot be used to dismiss a post-conviction claim alleging post-capture error. *Robinson v. State*, 854 S.W.2d 393, 396 (Mo. banc 1993).

■ As to his ineffective assistance of counsel claim, we find that the motion court correctly concluded that this alleged error occurred prior to the defendant's escape. Any coercion by plea counsel upon the defendant to enter a guilty plea would necessarily have occurred before the defendant entered his plea, which occurred three months before his return to custody.

However, the defendant's claim that the trial court sentenced him in violation of Rule 24.02(d)(4) by refusing to allow him to withdraw his guilty plea after rejecting the plea agreement, involves post-capture error.

In concluding that this claim did not involve post-capture error the motion court relied on *Brown v. State*, 607 S.W.2d 801

(Mo.App.1980).[1]  In *Brown,* the defendant pleaded guilty to first degree robbery and armed criminal action. *Id.* at 802. This plea was entered pursuant to a plea bargain in which the defendant was to receive a sentence of eight years on the robbery count and four years on the armed criminal action count, to be served consecutively. *Id.* This plea bargain agreement also required that the defendant observe three conditions while he was free on bond pending sentencing. *Id.* One of these conditions was that he would appear for sentencing. *Id.* The defendant acknowledged that he accepted the conditions and he knew that if he violated any of them the plea court was not bound by any agreement as to sentencing. *Id.* After the defendant acknowledged these conditions, the court questioned him to insure that his guilty plea was voluntarily and intelligently made. *Id.* at 802–03.

After the defendant entered his plea, he was released on bond pending sentencing. The defendant failed to appear for sentencing and he was later arrested under a warrant. The plea court imposed a sentence of ten years on the robbery charge and six years on the armed criminal action count, to be served consecutively.

On appeal, the defendant argued to this court that he was entitled to withdraw his guilty plea because the trial court failed to sentence him in accordance with the plea agreement, rendering his plea involuntary. *Id.* In rejecting this argument, we held that the condition placed upon the defendant to appear at sentencing was part and parcel of the plea bargain itself. *Id.* The court accepted the plea agreement and agreed to abide by its terms, including the condition concerning the defendant's appearance at sentencing. *Id.* Because the court merely carried out the bargain actually made when it sentenced him to sixteen years imprisonment, we held that the defendant was not entitled to withdraw his guilty plea. *Id.* at 805.

The same result was reached by the Eastern District in *Harris v. State,* 766 S.W.2d 460 (Mo.App.1989). In *Harris,* the defen-

dant pleaded guilty to various charges pursuant to a plea agreement, which provided that in exchange for his guilty plea he would be sentenced to a total of three years imprisonment. *Id.* at 461. The defendant then requested the court to delay sentencing. *Id.* In granting this request, the court informed the defendant that if he appeared for sentencing the court would sentence him to three years, but it would impose a sentence of six years if he failed to appear. *Id.* This condition was accepted by counsel, and explained to and accepted by the defendant. *Id.* at 463. The defendant failed to appear so the court sentenced him to six years imprisonment after he was returned to custody. *Id.* at 461–62. At the time of the sentencing the defendant made no request to withdraw his guilty plea. *Id.* at 462.

The defendant unsuccessfully sought postconviction relief claiming that the court violated Rule 24.02(d)(4). *Id.* On appeal the court found that the record fully supported the motion court's finding that the plea bargain accepted by the court was for concurrent three year terms if the defendant appeared for sentencing and concurrent six year terms if he did not. *Id.* at 463. The appellate court also held that the sentencing court did not violate Rule 24.02(d) when it suggested an alternative to the agreement, a greater punishment if the defendant failed to appear for sentencing. *Id.* As a result of this suggestion, a condition that the defendant appear for sentencing as scheduled or face greater punishment was accepted by counsel, and explained to and accepted by the defendant. *Id.* Thus, the accepted plea bargain included this condition. *Id.*

Here, the motion court noted that at the time of the guilty plea, the plea court advised the defendant that if he failed to appear for sentencing his sentence would be increased up to a possible forty-five years imprisonment and he would not be allowed to withdraw his plea. Citing *Brown,* the motion court concluded that this condition on the defendant's appearance at sentencing was part of the plea bargain itself. Because the

---

**1.** This case was reexamined with regard to a double jeopardy issue. See *Brown v. State,* 619

S.W.2d 68 (Mo. banc 1981).

defendant violated this condition the plea court was merely enforcing the plea agreement when it sentenced him to ten years imprisonment. Consequently, the motion court concluded that if there was any error it did not occur at the time of the sentencing, but rather at the time the defendant entered his guilty plea. Because this would not constitute post-capture error, the motion court applied the escape rule to dismiss the claim. However, the motion court erred by concluding that *Brown* stands for the proposition that the condition of a timely appearance became part of the plea bargain itself.

Unlike the facts in *Brown* and *Harris,* the record before us fails to show that the defendant's timely appearance at sentencing was part of the plea agreement. In *Brown,* the trial court informed the defendant of the conditions prior to accepting his guilty plea. *Brown,* 607 S.W.2d at 802–03. The court, defense counsel, and the prosecutor all asked the defendant if he understood that if he did not appear for sentencing the sentence he would receive would be in the sole discretion of the trial court. *Id.* During the plea the court asked the following questions with the responses by the defendant:

Q. If you commit any one of those three conditions, then my commitment is off and I can give you anything I want to, up to two consecutive life sentences. You understand that?

A. Yes.

Q. Now you're pleading guilty for two reasons. One, you did commit the robbery, using the robbery, using a knife, like you're charged with, didn't you?

A. Yes.

Q. And you are also pleading guilty because you know what I'm going to do to you?

A. Yes.

Q. And that includes the conditions that I have attached—

A. Yes.

Q. —which we have just talked about, do you understand that—don't you? It's all part of the same package. I've made a commitment to you as long as you keep your commitment to me; that is, that you show up, you don't commit any more criminal offenses and you don't contact [the state's witness]. Okay?

A. Yes.

Q. Is there anything about any one of those three conditions that you feel that you cannot abide by?

A. No, sir.

Q. Any difficulty, at all, about abiding by any one of those three commitments?

A. No, sir.

Q. All right. Now, you know what will happen if you violate any one of the three don't you?

A. Yes.

Q. I'll use my own discretion at that time as to what the sentence will be and I'm not [sic] released from my commitment as far as I'm concerned and if you have any difficulty with accepting that, I want you to tell me right now before I accept your plea of guilty.

A. No, sir, I don't have any difficulties.

Q. You're willing to accept that, so that sentencing will be deferred until December 27, 1978 so you can spend the next, approximately four weeks with your family, right?

A. Yes.

*Id.* Such a record unambiguously established that the condition to appear at sentencing or face an increased punishment was part of the agreement. *See State v. Jones,* 789 S.W.2d 856, 858 (Mo.App.1990).

The record in *Harris* also unambiguously established that the condition to appear at sentencing was a part of a plea agreement accepted by the court. Before granting the stay of execution the court told the defendant:

[T]he plea bargain will go down on the 26th to be the three years unless you fail to show up and then it will be six concurrent with each other instead of the three. Now, do we understand one another?

*Harris,* 766 S.W.2d at 461. This condition was accepted by counsel, and explained to and accepted by the defendant. *Id.* at 463.

At the evidentiary hearing concerning his post-conviction motion, the defendant stated that he had understood that the court had made the condition part of the plea agreement. *Id.* at 462.

In this case, defense counsel requested a one-week stay of execution on the defendant's sentence before the plea court heard the defendant's guilty plea or accepted the plea agreement. The plea court then questioned the defendant concerning the voluntariness of his plea, and accepted his plea *before* informing the defendant what the court might do if he failed to appear for sentencing. It was at this point of the proceedings that the following brief discussion took place:

THE COURT: Do you want me to accept your guilty pleas to Counts I, III and V, all class B felonies?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you want me to accept the plea agreement?

DEFENDANT: Yes.

THE COURT: You may step down.

(Witness excused.)

THE COURT: Okay. Tell you what I'm going to do, young man. I'm going to accept your guilty pleas but I'm not going to tell you today whether or not I'm going to accept the plea agreement. You be back here at 9:30 on Monday, April 4th, and if you appear at that time for sentencing, and have not otherwise violated the criminal law, at that time I will accept the plea agreement. But if you fail to appear, then the plea agreement is off. I will not allow you to withdraw your guilty pleas and I can sentence you to any sentence I deem appropriate at that time. So if you want me to accept the plea agreement you better be back here on time.

DEFENDANT: Yes, sir, Your Honor.

THE COURT: Because if you don't, I can go up to 45 years. Think that's good enough?

DEFENDANT: Yes, Your Honor.

Unlike the plea proceedings in *Brown* and *Harris,* the record before us fails to establish that the defendant's timely appearance was made part of a plea agreement. When the defendant here told the court that he wanted it to accept the plea bargain the only terms that had been discussed were the dismissal of the armed criminal action charges and the concurrent terms of five years imprisonment. The defendant entered his guilty plea based upon these terms. No condition of a timely appearance on the sentencing date was mentioned before the plea was entered. To make a defendant's timely appearance at sentencing part of the plea bargain, the court must clearly explain this condition to the defendant before ensuring that the plea is voluntary and accepting the defendant's guilty plea. *See Brown,* 607 S.W.2d at 802–03. The language used by the court demonstrates that it did not make the defendant's timely appearance at sentencing a part of the plea agreement. Instead, the record shows that the court warned the defendant that it would reject the agreement if he failed to show for sentencing.

These facts distinguish our situation from those in *Brown* and *Harris.* In each of those cases the plea agreement that the court accepted included a term that would increase the defendant's sentence if he failed to appear at sentencing. Thus, at the later sentencing proceedings when the court imposed a higher sentence than that originally presented by the state, the court was merely enforcing the plea bargain already made and accepted by the court. Because the court was not rejecting a plea agreement, the defendant did not have a right to withdraw his plea as involuntary.

Here, however, the court warned the defendant at the plea proceedings that it would reject the plea agreement if he failed to appear for sentencing. On the actual sentencing date the court informed the defendant that because he had failed to appear on the original sentencing date that it was rejecting the plea agreement. When the court did this, it was required by Rule 24.02(d)(4) to give the defendant the opportunity to withdraw his plea. Thus, the error did not occur at the plea proceedings, but rather at the sentencing hearing when the court refused to allow the defendant to withdraw his

plea. As this was post-capture error, it was improper to dismiss this claim pursuant to the escape rule.

However, we need not remand this case to the motion court for additional findings of facts and conclusions of law. The motion court found that the plea court rejected the plea agreement at the sentencing hearing. When the court rejected the plea agreement at the sentencing hearing it was required to give the defendant the opportunity to withdraw his guilty plea. Rule 24.02(d)(4). The court erred by sentencing the defendant without allowing him to withdraw his plea.

On remand, the defendant should be given the right to withdraw his plea in accordance with Rule 24.02(d)(4). The plea court is then free to accept the sentence of five years on each count, to be served concurrently, or to reject it as it did originally and proceed accordingly.

The judgment of the motion court is reversed and remanded to the trial court for disposition in accordance with this opinion.

All concur.